ANDREW NELSON v. MASHEK LUMBER COMPANY.[1]

June 16, 1905.

Nos. 14,344—(121).

**Modification of Contract.**

A written contract providing that the scale to be made by the surveyor general or his deputy at the time the logs to be cut and hauled are to be loaded upon cars, and not before and not after, should be binding upon the parties, was subsequently modified in writing so as to provide for delivery on skidways for a price per thousand less than under the original contract, without any reference whatever to scaling the logs. There was direct conflict in the testimony of the parties at the time of the modification as to whether they then orally agreed that the scaling should be final or merely prima facie. *Held*, it was for the jury to determine what was the actual agreement.

**Conspiracy.**

Evidence of conspiracy between the logging contractor and the deputy who scaled the logs under such modified contract *held* sufficient to justify submission of that question to the jury.

Action in the district court for St. Louis county to recover $1,642.23 for services in cutting, hauling and delivering saw logs under a written contract. The case was tried before Ensign, J., and a jury, which rendered a verdict in favor of plaintiff for $1,599.50. From a judgment entered pursuant to the verdict, defendant appealed. Reversed and new trial ordered.

*H. B. Fryberger,* for appellant.

*Shubael F. White,* for respondent.

JAGGARD, J.

In this case plaintiff and respondent, a logging contractor, agreed in writing with defendant and appellant, a lumber company, to cut, haul, and deliver on board cars at a designated place certain timber standing on the latter's land, at $6 per thousand. The amount so delivered by the contractor was to be determined by the scale of the surveyor general of logs, or his deputies,

[1] Reported in 103 N. W. 1027.

> To be made at the time when said logs are being loaded upon the cars, * * * and not before and not after, and such scale shall be final and binding.

This contract was subsequently modified in writing so that the defendant should let the contract of loading the logs to a named railway company, and the plaintiff should be paid $5.75 (instead of $6) per thousand, and should deliver the logs at the landing on skids (instead of on board cars). A deputy from the surveyor general's office scaled the logs on the skids at the landing, showing 2,417 logs, measuring 484,500 feet. When the cars were sent to load the logs, certain testimony tended to show that the small number of cars required to transport these logs indicated a shortage of nearly one hundred thousand feet, and that thereupon the defendant and appellant had a number of more or less complete scalings made, which showed a similar shortage. The jury returned a verdict for the plaintiff in the sum of $1,599.50. From the judgment entered thereon this appeal was taken.

1. The first question presented by the record in this case is whether or not, under the modified contract, the scale of the surveyor general was final and conclusive. The court charged the jury that

> Such modification of the contract does not affect the agreement in the original contract, except that the logs were to be scaled on the skidways; and that by the agreement the amount of said logs was to be determined by the scale of the surveyor general * * * or his deputies, such scale to be made when said logs were being placed on said skidways, not before and not after, as aforesaid.

The written modification of the original contract contained no reference whatever to the scaling by the surveyor general or his deputies at the new place of delivery. By no reasonable construction can the provisions of the original contract that such scale made at the loading of the cars should be final and conclusive be extended to apply to the modified contract, by which the logs were to be delivered on the skids. The terms of that original contract preclude such application. They are significantly specific. The scale was to be made at the time when the logs were to be loaded on the cars, and not before and not after. A good reason for this particularity of language was the opportunity

afforded at the time of loading on the cars for correct measurement of the logs, and the ease with which fraud in measurement could be then and there detected. The written agreement thus being insufficient to justify the charge of the court, the testimony as to the parol agreement of the parties with reference to the scaling of the logs at the new place of delivery determines the controversy. The record shows that there was a radical dispute on this point. Plaintiff introduced evidence to show that the parties orally agreed that the scale by the surveyor general or his deputy on the skids was to be final and conclusive. The defendant, on the other hand, produced testimony tending to show that there was no such an agreement, but that the defendant expressly reserved the right of subsequent scaling of the logs by himself independently. Upon this state of facts it was for the jury to determine what agreement the parties finally made in point of fact as to the effect of the scale by the surveyor general or his deputy. The charge of the court on this point was therefore erroneous.

2. The second question presented by the record concerns the charge of the trial court as to the fraudulent conspiracy alleged by the defendant to have existed between the plaintiff and the deputy who scaled the logs. The trial court charged one place:

> You are to find the amount of said logs in accordance with these scale bills, unless you find that said scale was made as the result of a gross mistake by said scaler, as hereafter instructed. A gross mistake of the scaler is a mistake of such magnitude and character that it could not be made in the exercise of an honest, impartial measurement of the logs, and an honest and impartial judgment of said scaler Drake, and would amount to misconduct on the part of said Drake in making said scale.

At another place it charged:

> I say to you now, gentlemen, that there is no evidence in this case of fraudulent agreement or conspiracy between the plaintiff and the deputy surveyor general Drake.

The record, as presented to this court, contains enough evidence to make an issue of fact for the jury to determine whether or not the scale actually made was the result of a fraudulent agreement or conspiracy.

Judgment appealed from reversed and new trial ordered.